Larry B. Kehl
J. James Learned
Buchhammer & Kehl
1821 Logan Avenue
Cheyenne, Wyoming, 82003
Telephone: (307) 634-2184

Scott L. Carey
Melisa G. Thompson
Bates Carey Nicolaides LLP
191 North Wacker,
Chicago, Illinois, 60606.
Telephone: (312) 762-3140

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

| | |
|---|---|
| BRIDGET SMITH, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    10-CV-156-NDF |
| | ) |
| RAIL LINK, INC. and | ) |
| GENESEE & WYOMING, INC., | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants, Rail Link, Inc. ("Rail Link") and Genesee & Wyoming, Inc. ("G&W"), by their attorneys, submit this Memorandum in support of their Motion for Summary Judgment against Plaintiff:

## INTRODUCTION

Plaintiff's two-count Complaint attempts to allege causes of action against Defendants under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, yet neither Rail Link nor G&W are subject to FELA. FELA applies only to "common carriers by railroad." Plaintiff's employer, Rail Link, is an in-plant rail switching company and, therefore, not a common carrier. In fact, numerous courts have held that Rail Link, specifically, is not a common carrier and that in-plant rail switching companies, generally, are not common carriers. Likewise, G&W, as a holding company, does not provide any rail services and cannot be considered a common carrier. For this reason, the Court should grant summary judgment in favor of Rail Link and G&W and dismiss both counts of the Complaint with prejudice.

Furthermore, FELA applies only where the plaintiff is "employed" by the defendant. Defendant G&W owns Rail Link but is not Plaintiff's employer. Only Rail Link, not G&W, exerted control over Plaintiff during her employment with Rail Link. Plaintiff did not report to anyone at G&W, and G&W did not direct or supervise Plaintiff in any way. For this additional reason, the court should grant summary judgment in favor of G&W and dismiss Count II of the Complaint with prejudice.

## FACTUAL BACKGROUND

Bridget Smith is a former employee of Defendant Rail Link and a resident of Gillette, Wyoming. (Complaint, Exhibit A hereto, ¶¶ 6, 9). Smith alleges she injured her left ankle while

working as a freight train operator for Rail Link at the Belle Ayre Mine near Gillette. (*Id.*, ¶¶ 10, 11.)

G&W is a holding company. (Affidavit of J. Benz ("Benz Aff."), Exhibit B hereto, ¶ 3.) It does not employ anyone except its senior executives, corporate officers and their administrative staff, and it does not control the day-to-day operations of any of its subsidiaries. (*Id.*) G&W does not perform rail services, nor does it hold itself out to the public as performing rail services. (*Id.*)

Rail Link is a wholly owned subsidiary of G&W. (*Id.*, ¶ 2.) Rail Link is primarily engaged in the business of providing in-plant rail switching services for private company clients. (*Id.*, ¶ 4.) Rail switching services are internal movement services at certain locations, such as mines. (*Id.*) Once railcars come into the client's facility from the outside, Rail Link performs rail switching services in connection with the loading/unloading process. (*Id.*) These services can be operated only on the tracks within the premises that are owned and controlled, or leased and controlled, by the client company. Rail Link employees are not free to leave the premises with railcars and perform no movement of railcars outside the facility. (*Id.*)

The in-plant rail switching services Rail Link provides are an extension of its clients' businesses; Rail Link does only the work that is tied directly to the client's operations. (*Id.*, ¶ 5.) Rail Link's service is narrow in scope, and Rail Link has no responsibility for the condition or maintenance of the track or of the railroad equipment at the facilities. (*Id.*) The relationship

governing the care, custody and control of railroad equipment moving to and from the facility resides with the railroad and the mining companies, not with Rail Link. (*Id.*)

Rail Link neither provides nor offers services to the general public either at the Belle Ayre Mine or elsewhere. (*Id.*, ¶ 6.) In fact, Rail Link cannot offer its services to the public because it does not own or lease any railroad facilities. (*Id.*) Rail Link could not solicit business from the general public even if it wished to do so because Rail Link does not have any location or facility to initiate or terminate shipments. (*Id.*) Moreover, Rail Link publishes no charges for accepting public business or engaging in any contractual relations with the public at the Belle Ayre Mine. Rail Link has never held itself out as a common carrier or as willing to haul or move goods for the general public, for hire or otherwise. (*Id.*)

At the time of the alleged accident involving Bridget Smith, one of the customers with whom Rail Link was under contract was Foundation Coal West, Inc. ("Foundation Coal"). (*Id.*, ¶ 7.) Rail Link's services for Foundation Coal were limited to the handling of Foundation Coal's shipments at the Belle Ayre mine and were performed solely on track owned or leased by Foundation Coal. (*Id.*) Specifically, Rail Link employees, such as Bridget Smith, operated a train so that coal could be loaded and moved solely within the Foundation Coal facility. Rail Link does not own or maintain any locomotives, railcars, tracks or railroad equipment at the Belle Ayre mine, nor does it own or lease any specialty equipment or the tools needed to maintain track or rolling stock at the Belle Ayre Mine. (*Id.*)

Rail Link received remuneration on a "per ton loaded" basis from Foundation Coal, its customer, but not from any railroad as a fixed charge or as a percentage of the profits. (*Id.*, ¶ 8.) Furthermore, Foundation Coal's compensation to Rail Link remained the same regardless of the amount of coal Foundation Coal shipped by rail via common carrier. (*Id.*) Rail Link's contractual obligation ran distinctly and only to Foundation Coal. Rail Link could not participate with railroads serving Foundation Coal in any tariff, contract, rate or other charge governing interstate movements of any commodity by rail. (*Id.*)

In conjunction with its in-plant rail switching services, Rail Link also has contracts with certain railroads to perform daily inspections of the railroads' locomotives while the locomotives are on mine premises. (*Id.*, ¶ 9.) Pursuant to these contracts, Rail Link employees are not authorized to operate on the railroads' rail corridors or tracks, and are authorized only to work or operate on property or track owned, leased or controlled by the mines. (*Id.*) Rail Link receives a per locomotive fee for its services. (*Id.*)

Like all employees working at the Belle Ayre Mine, Smith was hired by Rail Link to be a miner, not a railroad employee and was trained as prescribed in Title 30 CFR Part 48 (MSHA New Miner Training). (*Id.*, ¶ 12.) Smith did not receive training as a railroad worker as prescribed by Title 49 CFR Part 240 (FRA Locomotive Engineer Certification). (*Id.*)

Also in conjunction with its in-plant rail switching services, Rail Link has contracts with certain railroads relating to communications between the railroads and the mines regarding mine conditions and the status of train flow in and out of the mines. (*Id.*, ¶ 10.) Pursuant to these

5

contracts, Rail Link also follows up on crew calls and keeps a database regarding certain dispatch information. (*Id.*) Rail Link receives monthly fees for its services. (*Id.*)

Neither G&W nor Rail Link contributes to railroad retirement benefits nor withheld railroad retirement taxes from Smith's pay. (*Id.*, ¶ 11.) Moreover, neither corporation contributes to railroad unemployment insurance or reports injuries to the Federal Railroad Administration. (*Id.*) Neither the Federal Railroad Administration nor the Interstate Commerce Commission (ICC) nor the Surface Transportation Board has ever asserted jurisdiction over Rail Link or G&W. (*Id.*) Neither G&S nor Rail Link is registered with, nor can they file tariffs with the ICC. (*Id.*) Neither company was created by the issuance of a "Certificate of Public convenience and Necessity" from the ICC, which they would have had to have obtained if they were to operate as a "common carrier by railroad." (*Id.*)

Rail Link's employees are employees only of Rail Link, not of any of Rail Link's customers or any railroads, and not of G&W. (*Id.*, ¶ 12.) During her employment with Rail Link, Bridget Smith, like all other Rail Link employees, was managed and directed by her superiors at Rail Link, not by G&W or any of its subsidiaries. (*Id.*, ¶ 13.) Smith did not report to anyone at G&W. (*Id.*) Smith collected workers compensation as a Rail Link employee and is now attempting to proceed under an alternative forum which is not available to her.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there exists a genuine issue of material fact, courts must view the evidence in the light most favorable to the nonmoving party. *See Sullivan v. Scoular Grain Co. of Utah*, 930 F.2d 798, 800 (10th Cir. 1991). After adequate time for discovery, summary judgment is mandatory against a party failing to show the existence of an element essential to the proof of its case at trial. *Id.*

## ARGUMENT

### I. PLAINTIFF'S CLAIMS DO NOT FALL WITHIN THE SCOPE OF FELA AND SHOULD BE DISMISSED WITH PREJUDICE.

Count I of Plaintiff's complaint attempts to allege a FELA claim against Rail Link, and Count II attempts to allege a FELA claim against G&W. Under FELA, a plaintiff must establish: (1) that the defendant is a common carrier by railroad engaged in interstate commerce; (2) that she was employed by the defendant and assigned to perform duties which furthered such commerce; (3) that her injuries were sustained while she was employed by the common carrier; and (4) that her injuries resulted from the defendant's negligence. *Mack v. E. Camden & Highland R.R. Co.*, 297 F. Supp. 2d 1052, 1056 (W.D. Tenn. 2003); *see* 45 U.S.C. § 51.

As set forth below, Plaintiff cannot maintain a FELA claim against Rail Link or G&W. Both Rail Link and G&W are entitled to summary judgment because they are not common carriers. Likewise, G&W is entitled to summary judgment because Plaintiff was not employed by G&W.

A. **The Court Should Grant Summary Judgment Against Plaintiff On Both Counts Of The Complaint Because Neither Rail Link Nor G&W Is A Common Carrier.**

   1. **Rail Link Is Not A Common Carrier.**

Liability under FELA is expressly limited to "common carriers by railroad." *Kieronski v. Wyandotte Terminal R.R., Co.*, 806 F.2d 107, 108 (6th Cir. 1986). A common carrier has been defined as:

> [O]ne who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally. The distinctive characteristic of a common carrier is that he undertakes to carry for all people indifferently, and hence is regarded in some respects as a public servant.

*Kelly v. Gen. Elec. Co.*, 110 F. Supp. 4, 6 (E.D. Pa.), *aff'd* 204 F.2d 692 (3d Cir. 1953). In *Lone Star Steel Co. v. McGee*, 380 F.2d 640 (5th Cir. 1967), the Fifth Circuit identified several factors that are relevant to determining whether a railroad is a common carrier:

> First – actual performance of rail service, second – the service being performed is part of the total rail service contracted for by a member of the public, third – the entity is performing as part of a system of interstate rail transportation by virtue of common ownership between itself and a railroad or by a contractual relationship with a railroad and hence such entity is deemed to be holding itself out to the public, and fourth – remuneration for the services performed is received in some manner, such as a fixed charge from a railroad or by a percent of the profits from a railroad.

380 F.2d at 647. This list is not exhaustive but serves as a "list of considerations for a court to keep in mind" when determining whether a defendant is a common carrier. *Kieronski*, 806 F.2d at 108; *see also Sullivan*, 930 F.2d at 801.

In-plant switching companies, such as Rail Link, are not typically considered by the courts to be common carriers. In *Kieronski*, after reviewing numerous cases on this issue and reviewing the *Lone Star* court's list of considerations, the Sixth Circuit set forth an explanation of several categories that carriers can be divided into:

1) <u>In-plant facilities (where material is loaded and moved from within a plant to a public railroad for transport). These are typically not considered to be common carriers and are not, therefore, subject to FELA</u>;

2) Private carriers who haul for others, but only pursuant to individual contracts, entered into separately with each customer. These are typically not considered to be common carriers and are not, therefore, subject to FELA;

3) Carriers who link two common carriers together. These are typically considered to be common carriers and are, therefore, subject to FELA; and

4) Operations like those in *Lone Star* (where the switching company was carrying freight for several customers along the line and was linking the customers to its subsidiary common carrier railroad). These are typically considered to be common carriers and are, therefore, subject to FELA.

*Kieronski*, 806 F.2d at 109 (emphasis added). There is no dispute that Rail Link, an in-plant switching company, falls within the first category.

In fact, three different courts—including this Court—have held that Rail Link is not a "common carrier" subject to FELA. *See Wolf v. Rail Link, Inc.*, No. 99-CV-40-B, slip op. (D. Wyo. Jan. 3, 2000); *Erwin v. Rail Link, Inc.*, No. CIV-93-160-3 (Ark. Cir. Ct. June 21, 1994) (order granting summary judgment); *Waters v. Rail Link, Inc.*, No. 91-26837 (Tex. Dist. Ct. May

21, 1992) (order granting summary judgment) (*see* Exhibits C through E hereto). As this Court explained, "[t]he Tenth Circuit takes a common sense approach to this issue, defining a common carrier by railroad as 'one who operates a railroad as a means of carrying for the public—that is to say, a railroad company acting as a common carrier.'" *Wolf*, Exhibit C hereto, No. CIV-93-160-3, at 13-14 (citations omitted). "Most courts to consider the issue have held that entities performing rail switching services like those performed by Rail Link are not common carriers." *Id.* at 19.

Indeed, virtually all state and federal courts addressing this issue have concluded that rail switching companies like Rail Link are not considered "common carriers" under FELA. *See Iverson v. So. Minn. Beet Sugar Co-op*, 62 F.3d 259 (8th Cir. 1995) (industries operating in-plant rail facilities for their own benefit and not offering transportation to the public for a fee are not considered common carriers); *Kieronski*, 806 F.2d at 109-10 (defendant's in-plant system connected to two common carriers, but in no way acted to "link" them or to perform functions for which the customers of the common carriers had contracted; defendant merely connected the plants to the common carriers in a manner typical of in-plant systems); *Huntley v. Bayer MaterialScience*, LLC, Civil Action No. G-10-10, 2010 WL 4053702, at *5 (S.D. Tex. Oct. 14, 2010) (company which operated its own in-plant switching operations was not a common carrier); *Mack*, 297 F. Supp. 2d at 1062 (railroad company that had exclusive contract with plant operator, did switching of railcars and used rest of facility for railcar storage, received cars from two common carriers and operated exclusively on in-plant facilities and track owned by Army

and maintained by plant operator was not "common carrier"); *Wurster v. Riverport R.R., LLC*, No. 02 C 50353, 2003 WL 22709900 (N.D. Ill. Nov. 7, 2003) (performing switching services for customers cars which have been delivered and are subsequently removed by a common carrier does not make defendant a common carrier); *Duffy v. Armco Steel Corp.*, 225 F. Supp. 737 (W.D. Pa. 1964) (defendant was not a common carrier where it owned and operated railroad equipment within its manufacturing plant, equipment was used to transport material and equipment from one place to another within the plant and other plants of defendant located in the same area over leased rights of way, equipment had not been used to transport goods of others, and defendant had not offered its use to the public); *O'Brien v. Watco Contract Switching, Inc.*, 802 N.E.2d 999 (Ind. Ct. App. 2004) (intra-plant switching service not a common carrier subject to FELA); *Loveless v. Ry. Switching Servs., Inc.*, 665 N.E.2d 252 (Ohio Ct. App. 1995) (company engaged in business of performing in-plant rail switching services for company-clients at facilities of those clients pursuant to individually negotiated contracts was not a common carrier).

A somewhat recent case considering this question is *Willard v. Fairfield Southern Co.*, 472 F.3d 817 (11th Cir. 2006). In *Willard*, the Eleventh Circuit affirmed summary judgment in favor of the defendant, an in-plant railroad providing rail service to certain customers' facilities, and found that the defendant was not a "common carrier" subject to FELA. The *Willard* court specifically found that the defendant did not hold itself out to the public as providing rail service for hire. Instead, the evidence showed the defendant was an in-plant railroad that transported

products within the confines of its property. The *Willard* court explained, "[i]n a situation where an industry maintains a complicated intra-plant railroad system, such rail operations will be regarded as plant facilities rather than those of a common carrier." *Id.* at 822. "'The movement of freight within the plant is not common carriage, but rather industrial plant usage.'" *Id.* (citation omitted). The court further found that the defendant was paid directly by the customers it serviced and directly invoiced those customers. The defendant did not collect payment from any common carrier railroad and it did not hold itself out to the public for a fee. Thus, the Eleventh Circuit concluded that defendant was not a common carrier, but a private carrier. *Id.* at 22-23.

Like the defendants in the *Willard* case and others, Rail Link provides in-plant rail switching services for private customers on premises and tracks owned or leased by those customers. (Benz Aff., ¶4 .) Rail Link employees work on these premises and tracks and are not permitted to leave the premises with the railcars. (*Id.*) Rail Link does not offer or provide its services to the general public. (*Id.*, ¶ 6.) Indeed, it is not able to offer services to the general public because it does not have a location or facility where it can initiate or terminate shipments. (*Id.*) Rail Link has never held itself out as a common carrier or as willing to haul or move goods for the general public, for hire or otherwise. (*Id.*) While Rail Link provides some limited services to railroads, all of these services relate to the rail switching services, and none involve the provision of rail service to the general public. (*Id.*, ¶¶ 9, 10.)

In fact, Rail Link hires its employees to be miners, not railroad employees. (*Id.*, ¶¶ 12.) Employees are trained as prescribed in Title 30 CFR Part 48 (MSHA New Miner Training), not as railroad workers as prescribed by Title 49 CFR Part 240 (FRA Locomotive Engineer Certification). (*Id.*)

Moreover, Rail Link does not contribute to railroad retirement benefits and did not withhold railroad retirement taxes from Smith's pay. (*Id.*, ¶ 11.) Rail Link does not contribute to railroad unemployment insurance or report injuries to the Federal Railroad Administration. (*Id.*) Neither the Federal Railroad Administration nor the Interstate Commerce Commission (ICC) nor the Surface Transportation Board has ever asserted jurisdiction over Rail Link. (*Id.*.) Rail Link is not registered with, nor can it file tariffs with the ICC. Rail Link was not created by the issuance of a "Certificate of Public Convenience and Necessity" from the ICC, which it would have had to have obtained if it were to operate as a "common carrier by railroad." (*Id.*) Rail Link provides its services to its customers at its customers' discretion and, therefore, can be removed without petitioning any regulatory body, including the ICC. (*Id.*)

In this case, Plaintiff's alleged injuries occurred while she was working for Rail Link at the Belle Ayre Mine, pursuant to a contract with Foundation Coal. (*Id.*, ¶ 7.) Rail Link's services for Foundation Coal were limited to the handling of Foundation Coal's shipments at the Belle Ayre mine and are performed solely on track owned or leased by Foundation Coal. (*Id.*) Rail Link does not own or maintain any locomotives, railcars, tracks or railroad equipment at the Belle Ayre mine. (*Id.*) Rail Link received remuneration for its services from Foundation Coal,

its customer, but not from any railroad as a fixed charge or as a percentage of the profits. (*Id.*, ¶ 8.)

This uncontroverted evidence proves conclusively that Rail Link is not a common carrier. It is the Plaintiff's burden to show that Rail Link is a common carrier, and the Plaintiff must present affirmative evidence indicating such. Plaintiff cannot do so in this case. Because there is no genuine issue of material fact that Rail Link is not a "common carrier" under FELA, summary judgment should be granted in favor of Rail Link and Count I should be dismissed with prejudice.

  **2. G&W Is Not A Common Carrier.**

Just as Rail Link is not a common carrier, G&W is also not a common carrier. G&W is a holding company. (Benz Aff., ¶ 3.) It does not employ anyone except its senior executives, corporate officers, and the administrative staff necessary to support these executives and officers. (*Id.*) G&W does not control the day-to-day operations of any of its subsidiaries, including Rail Link. (*Id.*) G&W does not perform rail services, nor does it hold itself out to the public as performing rail services. (*Id.*)

Like Rail Link, G&W does not contribute to railroad retirement benefits and did not withhold railroad retirement taxes from Smith's pay. (*Id.*, ¶ 11.) G&W does not contribute to railroad unemployment insurance or report injuries to the Federal Railroad Administration. (*Id.*) Neither the Federal Railroad Administration nor the Interstate Commerce Commission (ICC) nor the Surface Transportation Board has ever asserted jurisdiction over G&W. (*Id.*) The company

is not registered with, nor can it file tariffs with the ICC. Furthermore, G&W was not created by the issuance of a "Certificate of Public Convenience and Necessity" from the ICC, which it would have had to have obtained if it were to operate as a "common carrier by railroad." (*Id.*)

Thus, G&W meets none of the criteria of a common carrier, *i.e.*, "one who holds himself out to the public as engaged in the business of transportation of persons or property from place to place for compensation, offering his services to the public generally." *Kelly v. Gen. Elec. Co.*, 110 F. Supp. 4, 6 (E.D. Pa.), *aff'd* 204 F.2d 692 (3d Cir. 1953).

In addition, parent corporations are not liable for subsidiary's liabilities, FELA or otherwise. *Selser v. Pac. Motor Trucking Co.*, 770 F.2d 551, 554 (5th Cir. 1985). Thus, even if Rail Link was subject to FELA liability, G&W would not be responsible for that liability. *See Paul v. Genesee & Wyoming Indus., Inc.*, 93 F. Supp. 2d 310, 315 (W.D.N.Y. 2000) (Genesee & Wyoming Industries, which was the holding company of plaintiff's employer, had no liability under FELA where evidence showed that it did not own or operate the railcar being inspected by plaintiff when he was injured).

For these reasons, the Court should grant summary judgment to G&W and dismiss Count II with prejudice.

### B.   The Court Should Enter Summary Judgment Against Plaintiff On Count II Because Plaintiff Was Not An Employee of G&W.

Not only is G&W not a common carrier, it was also not Plaintiff's employer. Liability under FELA exists only where there is an injury to or death of an "'employee'" and such injury or death occurs "'while he is employed by such carrier.'" *Dougall v. Spokane, P. & S. Ry. Co.*,

207 F.2d 843, 845-46 (9th Cir. 1953) (quoting 45 U.S.C.A. § 51). Plaintiff attempts to bring G&W within the scope of the FELA by claiming she is a "de facto" employee of G&W. The undisputed evidence shows, however, that, even if G&W was a common carrier, it did not control Plaintiff's actions and cannot be considered Plaintiff's employer under FELA.

As the United States Supreme Court explained in *Kelley v. Southern Pacific*, 419 U.S. 318 (1974), "the words 'employee' and 'employed' in [FELA] [are] used in their natural sense, and were intended to describe the conventional relation of employer and employee." *Id.* at 323. That is, the words refer to a "master-servant" relationship "to be determined by reference to common-law principles." *Id.* Under the common law, a plaintiff can establish that she was an employee of one employer while nominally the employee of another only: (1) by showing she was a borrowed servant of the railroad at the time of her injury; (2) by establishing that she was a dual servant of her employer and a railroad, acting for two masters simultaneously; or (3) by proving she was a subservant of a company that was in turn a servant of the railroad. *Id.* at 324; *see Campbell v. BNSF Ry Co.*, 600 F.3d 667, 672 (6th Cir. 2010).

Plaintiff admits she was an employee of Rail Link and, in fact, collected workers compensation as a Rail Link employee. She further alleges, however, that she was also a "de facto" employee of G&W. Under FELA, the test of whether a company is the employer of a particular worker turns on the degree of control the company exerts over the physical conduct of the work in the performance of services. *Kelley*, 419 U.S. at 324. In determining whether Plaintiff was employed by G&W within the meaning of the Act, the foremost consideration is

"'whether the [defendant] had the power to direct, control and supervise the plaintiff in the performance of his work at the time he was injured.'" *Morris v. Gulf Coast Rail Group, Inc.*, ___ F. Supp. 2d ___, 2010 WL 1855863, *4 (E.D. La. May 6, 2010) (citations omitted).

Thus, a defendant is not liable under FELA "for injuries to an employee of its wholly owned subsidiary corporation when the [defendant] did not possess the right to control the employee's actions," even if the defendant "did control other aspects of the subsidiary's business." *Sullivan v. Consol. Rail Corp.*, 459 N.E.2d 513, 515 (Ohio 1984); *see Carey v. CSX Transp., Inc.*, Civ. A. No. K-4-1685, 1995 WL 251145, at *4 (D. Md. 1995) (plaintiff, who was employed by wholly owned subsidiary of defendant railroad, was not employed by railroad even though railroad was subsidiary's biggest client, where railroad did not control plaintiff's day-to-day activities); *Monestero v. Union Pac. Rd. Co.*, 2001 WL 1566772, No. A-00-883, at *6 (Neb. Ct. App. Dec. 11, 2001) (plaintiff was employed by wholly owned subsidiary of railroad but not by railroad where evidence showed that railroad did not play a significant role in subsidiary's operations, subsidiary's employees were not being supervised by railroad at the time of plaintiff's injury and railroad did not have the general right to control the activities of the subsidiary's employees).

Plaintiff cannot show that she was employed by G&W in any capacity at the time of her injury. Rail Link's employees are employees only of Rail Link, not of any of Rail Link's customers or any railroads, and not of G&W. (Benz Aff., ¶ 13.) During her employment with Rail Link, Bridget Smith, like all other Rail Link employees, was managed and directed by her

superiors at Rail Link, not by G&W or any of its subsidiaries. (*Id.*, ¶ 14.) Smith did not report to anyone at G&W. (*Id.*) G&W simply exerted no control over Smith or any other employee of Rail Link, nor did it exert control over Rail Link's day-to-day operations at the Belle Ayre Mine. (*Id.*)

There is no genuine issue of material fact that Plaintiff was not an employee of G&W, an essential element to her FELA claim. Count II of Plaintiff's Complaint fails as a matter of law and should be dismissed in its entirety.

## **CONCLUSION**

For the reasons set forth above, Defendants request that the Court grant summary judgment in their favor and against Plaintiff on both counts of the Complaint.

DATED this 13th day of December, 2010.

RAIL LINK, INC. and GENESEE & WYOMING, INC., Defendants.

_____

Larry B. Kehl,
J. James Learned,
Buchhammer & Kehl
1821 Logan Avenue
Cheyenne, Wyoming, 82003
Telephone: (307) 634-2184
Fax: (307) 634-2199

Scott L. Carey
Melisa G. Thompson
Bates Carey Nicolaides LLC
191 North Wacker, Suite 2400
Chicago, IL 60601
Telephone : (312) 762-3100
Fax: (312) 762-3200

Attorneys for Defendants Rail Link, Inc. and Genesee & Wyoming, Inc.